**COGGIN v. COGGIN.**

No. 5795.

Court of Civil Appeals of Texas. Amarillo.

June 30, 1947.

Rehearing Denied July 21, 1947.

James O. Cade and Robt. J. Allen, both of Lubbock, for appellant.

Burks & McNeil, of Lubbock, for appellee.

LUMPKIN, Justice.

H. I. Coggin, appellant, perfected this appeal from a judgment in which his wife, Vera Coggin, the appellee, was granted a divorce, title to all of the property she claimed as her separate property, and $2,-430.40, the balance due on a promissory note. Since the appellant makes no complaint as to that part of the judgment granting the divorce, the only points involved in this appeal concern the correctness of the trial court's judgment with reference to the property and the note.

Upon the dissolution of a former marriage in 1938, the appellee received as her portion of the community estate five tracts of land, located in Montague County, Texas, and Jefferson County, Oklahoma. In addition she inherited from her parents various tracts of land upon which were a number of producing oil wells and from which she received royalties. All of this property, together with a twelve hundred dollar bank account and a house in Wichita Falls, were owned by the appellee prior to her marriage with the appellant. The record reveals the appellee's property was valued in excess of $100,000. The appellant and the appellee were married January 28, 1940, and lived together for about six years.

In her original petition the appellee alleged that she and the appellant had no community property. She claimed as her separate property a home located at 3016 Twenty-Second Street, Lubbock, a Lincoln automobile, certain mineral rights in two tracts of land located in Lubbock County, and a $9,000 vendor's lien note, executed by one Tom French.

The appellant, in his amended answer, specifically pleaded as community property the $9,000 note, the mineral rights reserved in the two tracts of Lubbock County property, which we shall hereafter call the Gill tracts, the Lincoln automobile, and the Lubbock home. The appellant acknowledged that the properties located in Montague County, Texas, and Jefferson County, Oklahoma, were the appellee's separate property.

Appellee specially pleaded as her separate property the property classed by appellant to be community property; that it had been purchased with money derived from the sale of property she had before she married the appellant; that all the deeds thereto recited that the consideration was paid from her separate property and that the property was purchased for her sole use and benefit; and that these deeds were so drawn with the knowledge and acquiescence of the appellant. The appellee further pleaded that in the event appellant established any community interest in any of the property, that she have judgment against him for certain money borrowed by him from her.

Trial was to a jury. To the thirty-three special issues submitted, the jury established, as far as we are concerned in this opinion, the following facts: That the home located at 3016 Twenty-Second Street, Lubbock, the household and kitchen furniture therein, and the two tracts of land conveyed to the appellee by C. M. Gill were purchased with the appellee's individual and separate funds; that none of the appellant's money went into the purchase of these properties; that the $9,000 vendor's lien note signed by Tom French was the appellee's separate property; that the three-fourths interest in the royalty in the two Gill tracts was the separate property of the appellee; and that during the marriage the appellee had loaned the appellant $2,929. The other jury findings will be pointed out as we discuss appellant's various contentions.

The trial court adjudged the home and furniture, the three-fourths mineral interest in the Gill tracts, and $9,000 vendor's lien note to be the appellee's separate property. The Lincoln automobile was adjudged community property and its value fixed at $4,000. It appearing to the court that the appellee had loaned the appellant $2,929 as evidenced by the note, upon which with interest and attorneys' fees the sum of $4,430.40 was due, the court credited the appellant with $2,000, his interest in the automobile, gave the automobile to the appellee and awarded the appellee judgment in the amount of $2,430.40, the balance due on the note.

The appellant attacks the court's judgment in fifteen points of error which, for the purpose of this opinion, we have grouped into these contentions: The court erred in not holding, as a matter of law, that real and personal property accumulated during marriage by either spouse with separate funds inseparably commingled with community funds to be community property; the court erred in rendering judgment in favor of the appellee on the $2,929 note; that the court did not properly define community property and other terms in his charge; and that the court by his conduct prejudiced the appellant's property rights.

The appellant first contends that the trial court erred in not holding, as a matter of law, that real and personal property accumulated by either spouse during their marriage from community bank accounts composed of community funds and separate funds inseparably commingled was community property even though title was in the wife who denied that any part of the bank account had been given her by the appellant. More specifically the appellant asserts that the home, the Gill tracts purchased by the appellee, and the mineral reservations she made when she sold this property, the $9,000 vendor's lien note she received in part consideration, and the Lincoln automobile are community property purchased with community funds.

■ It is the settled law in this state that rents and crops from separate property are part of the community estate and when these funds become commingled with separate property, as in a bank account, the presumption is that the whole is community property. This presumption is, of course, rebuttable. De Blane v. Hugh Lynch & Co., 23 Tex. 25; First National Bank v. Davis, Tex.Com.App., 5 S.W.2d 753; Frame v. Frame, 120 Tex. 61, 36 S.W. 2d 152, 73 A.L.R. 1512. And this same rule applies to money borrowed by either spouse. Our courts have held that whether borrowed money is separate or community owned depends on the intentions of the parties obtaining the loan. Emerson-Brantingham Implement Co. v. Brothers, Tex.Civ.App., 194 S.W. 608.

As revealed by the evidence, the home at Lubbock was purchased with money the appellee realized by selling one of her five tracts of land to her brother. In attempting to show that community funds went into buying the home, the appellant testified he had $7,500 at the time he married the appellee of which there remained $3,500 at the time he moved to Lubbock. One thousand dollars of this sum he contributed as earnest money when the purchase contract on the home was signed. However, this was refuted by the introduction of his testimony of May 13, 1944, before the 97th District Court of Montague County, a contempt hearing in which his former wife, Elma Coggin, sought support for her minor child. At the hearing the appellant swore he did not have a penny.

In explaining the $1,000 the appellee stated the money came from a safety deposit box at Lamesa, Texas, and was from the sale of her former home at Wichita Falls. The appellant testified he had placed $2,500 in the Wichita Falls home; this the appellee denied. Evidenced by nineteen cancelled checks payable to various furniture concerns and drawn on the two Lubbock banks carrying her account, the appellee testified that all the furniture in the Lubbock home was her separate property bought with her separate funds.

On March 8, 1945, C. M. Gill and his wife agreed to sell to the appellee, as her separate property, two tracts of land located in Lubbock County. The deed given by Gill and his wife for this property acknowledges receipt of $10,000 as having been paid by the appellee out of her separate property and recites that these two tracts of land are conveyed to the appellee for her sole and separate use and benefit. As part of the consideration, the appellee assumed two loans on the property. When Tom French bought these tracts, he assumed the loans on the property, paid the appellee $4,570 and gave her a vendor's lien note for $9,000. The appellee retained three-fourths of the mineral rights on these two tracts of land.

By a careful reading of the statement of facts, we have traced the appellee's separate funds through her various bank accounts. The appellee had a bank account in Wichita Falls, one in Nocona, Texas, one in Lamesa and two in Lubbock. We fail to find that any of the funds she had on deposit in Wichita Falls, Nocona, or Lamesa were transferred to Lubbock, other than the money derived from her brother at the time of the sale of her separate property. Part of this fund was immediately withdrawn from the Nocona Bank where it was originally placed and deposited in two Lubbock banks.

Concerning the Lincoln automobile, the appellee testified that on September 6, 1946, she gave the appellant a check for $900. The appellee said the appellant went to Detroit for the purpose of buying this automobile. In addition to the $900 check, he had four or five thousand dollars, most of which had been derived from the sale of her old car and other money that had come from the sale of her home in Wichita Falls.

■ As long as the identity of the property or of the funds can be traced, it is fundamental that the wife's separate estate may undergo changes and mutations without affecting its character as separate property. Stephens v. Stephens, Tex.Civ.App., 292 S.W. 290; Douglas v. Smith, Tex.Civ. App., 297 S.W. 767. Although land pur-

chased by a husband and wife, as in this case, is presumed to be community property, this presumption may be overcome by showing that the consideration was from one of the spouse's separate property. The record reveals, and the jury so found, that the home property and the Gill tracts were purchased with appellee's separate funds. However, the appellant asserts that these purchases were made with community funds for the reason that the evidence reveals that the separate funds of the appellee were commingled with money from rents and crops and borrowed money and, as a matter of law, these are community funds. The appellee stated that the agricultural and grass rentals from her Montague and Jefferson County property from 1940 to 1943 amounted to approximately $1,000 per year, and in 1944 only half of that amount was received. She said the family living expenses, which she paid, were $200 to $500 monthly. These rents, she declared, were used as they accrued for the family living expenses. The appellant did not deny any of these statements.

In answer to the special issues submitted the jury found: None of the agricultural and grass rental money was used for the purchase of the home at 3016 Twenty-Second Street, or for the furniture, or for the Lincoln automobile; that the money realized from appellee's separate property from 1940 to 1944 was spent for living expenses as it was received; that relying upon the appellant's representation that he was financially unable to support the appellee and her child, she expended $200 a month for this purpose; and that the appellant was not possessed of $7,500 as his own separate property and estate at the time he married the appellee.

A review of the record convinces us that the jury findings to the effect that none of the rent or crop money went into the purchase of the home is amply supported by the evidence. As to the borrowed money, the appellee testified she and the appellant borrowed about $8,000 from the Citizens National Bank at Lubbock as well as other amounts from other banks. The appellee was indefinite as to the details surrounding these loans. The appellant

stated that he had borrowed $26,800 from the First National Bank of Lubbock. There is no evidence to show when this money was borrowed. Concerning the borrowed money, the jury found: The funds were not deposited in the bank prior to the time the home and its furniture were purchased; or that the Gill tracts were purchased with the mixed funds of the parties; but the funds so borrowed were deposited in the bank prior to the purchase of the Lincoln automobile. Thus it would appear that none of the borrowed money went into any of the property except possibly the Lincoln automobile.

However, in answer to special issue number 25, the jury found that agricultural rentals were deposited in the various bank accounts, and in answer to special issue number 29, the jury found that the funds borrowed by the parties from the First National Bank were deposited in the bank in the appellee's account. In his brief, the appellant argues that because of these two findings the funds used to purchase the property here questioned are community property, and the trial court should have so held as a matter of law and rendered judgment for the appellant. With this we do not agree. When considered in the light of all the evidence, together with the other jury findings, in our opinion, the answers to special issues number 25 and number 29 were not material to the trial court's judgment; therefore the appellant's points of error in this connection are overruled. Thomas v. Gulf Banana Dispatch Co., Tex.Civ.App., 26 S.W.2d 665; Gulf States Security Life Ins. Co. v. Edwards, Tex.Civ.App., 109 S.W.2d 1125.

In response to special issue number 23, the jury found the Lincoln automobile to have been purchased with the appellee's separate funds. At the appellee's request the trial court disregarded this finding as not being supported by the evidence. In response to special issues number 29 and number 32, the jury found that the funds borrowed by the appellee were deposited in the First National Bank prior to the purchase of the Lincoln automobile, and the trial court concluded that the automobile was community property. This automobile

was purchased by the appellant in Detroit only a few days before the appellee filed this divorce suit.

Property acquired during marriage takes its status as separate or community property at the time of its acquisition, although a bank account consisting of separate and community funds commingled in such a manner that neither can be distinguished from the other must be regarded as community funds. Boyd v. Orr, Tex.Civ.App., 170 S.W.2d 829. We are convinced from a review of this record that as between themselves the husband and wife intended all this property, with the exception of the automobile, to be the appellee's separate estate. The appellant cites Pointer v. Pointer, Tex.Civ.App., 197 S.W.2d 504, to sustain the proposition that where the husband allowed title to properties to be taken in his wife's name but did not intend to make a gift of the properties to his wife as part of her separate estate and was unaware of the recitations of the deeds and contracts whereby it was stated that the property was conveyed as her separate property, the property was community. Such is not the situation in this case. From the undisputed facts, the appellant knew the deeds to the home and the Gill tracts recited that the purchase was made with funds from the appellee's separate property and estate and that the conveyance was made to the appellee for her sole and separate use and benefit. The evidence shows the appellant to have been present at these transactions. It is to be assumed that appellant did what he intended to do. The intentions of the parties are controlling in transactions of this nature, and it is settled that these intentions may be judged by the facts surrounding the case. Smith v. Buss, 135 Tex. 566, 144 S.W.2d 529. And although the appellant testified as to commingling of his separate funds, the money from the rents and crops, and the borrowed money with the appellee's separate funds, the record fails to reveal a single bank statement, cancelled check, memorandum, or witness whereby the appellant's statement in this connection may be corroborated. As we have seen, the jury found the home and the Gill tracts to

have been purchased with the appellee's separate funds. Article 4638, Revised Civil Statutes, charges the trial court in divorce cases, not the jury, with the responsibility of making "a division of the estate of the parties in such a way as the court shall deem just and right, having due regard for the rights of each party." In Hedtke v. Hedtke, 112 Tex. 404, 248 S.W. 21, 23, in discussing the power vested by this statute in the trial court, Judge Greenwood, speaking for the Supreme Court said: "The court pronouncing a decree of divorce is invested with wide discretion in disposing of any and all property of the parties, separate or community, and * * * its action, in the exercise of such discretion, should be corrected on appeal only where an abuse of discretion is shown in that the disposition made of some property is manifestly unjust and unfair." Clark v. Clark, Tex.Civ.App., 35 S.W.2d 189; Hamm v. Hamm, Tex.Civ.App., 159 S.W.2d 183. The appellant having shown no abuse of discretion on the part of the trial court, as well as for the reasons heretofore given, the appellant's contention in this connection is overruled.

Next the appellant contends the trial court erred in entering judgment in favor of the appellee on a $2,929 note. This note was given August 28, 1940, to the appellee by the appellant for the purpose of buying an airplane. Such a recovery by a wife from a husband, asserts the appellant, is against public policy for the reason that the note is the wife's separate property and the repayment of the note is to be made with community funds.

In this state each marital partner is given the sole management and control of his separate property. Either may grant property to the other; and, when not forbidden by statute, they may contract between themselves. The husband may borrow money from his wife, and he may pay the debt as any other creditor. Sparks v. Taylor, 99 Tex. 411, 90 S.W. 485, 6 L.R.A.,N.S., 381; Johnson v. Durst, Tex.Civ.App., 115 S.W.2d 1000. Thus the appellee and the appellant had ample authority to enter into such a transaction, and the appellee is justified in suing the appellant on the note.

Allen v. Frank, Tex.Civ.App., 252 S.W. 347; Swisher v. Swisher, Tex.Civ.App., 190 S.W. 2d 382; Speer's "Law of Marital Rights in Texas, 1929," at page 619. Since contracts between a husband and .his wife are not void in Texas, the trial court did not err in overruling the appellant's exception to appellee's plea for judgment on the $2,929 note; therefore appellant's points of error in this connection are overruled.

█ In answer to special issue number 15, the jury found that during the marriage of the parties the appellee "lent" money to the appellant; and in answer to special issue number 16, the jury found the sum "loaned" the appellant was $2,929. The appellant argues that these two special issues were improperly submitted because the words "lent" and "loaned" are a comment on the weight of the evidence, involves a question of law which should have been determined by the court. With this contention we do not agree; these special issues were correctly submitted. Davis v. Davis, Tex.Civ.App., 108 S.W.2d 681.

█ As we have seen above, the jury found that at the time of the marriage, the appellant represented to the appellee that he was financially unable to support his wife and child; that the appellee relied upon such representation and expended $200 per month from her separate funds for the family support. The appellant asserts that the trial court erred in not disregarding this jury finding. In its judgment the trial court makes no mention of these jury findings other than to include them with the jury verdict; however, the court probably considered these findings in writing its judgment. During the six years the parties were married, the evidence clearly reveals that the appellee sold some $70,000 worth of her separate property. Our courts have held it to be a husband's legal duty to support his wife and child, and while the community property is the fund usually used for such a purpose, it is not the only fund which may be taken. The husband's separate property is also liable and may be used rather than the wife's separate property. Where the wife supports the family from her separate property, the support is by the wife—not

the husband. Hedtke v. Hedtke, supra. In his motion for a new trial, the appellant insisted the special issues submitted concerning this matter were improper because the jury's answers as to whether or not the appellee relied upon the representation of the appellant as to his financial condition should have no material bearing on any of the material issues of this case, it being the law that such representation and agreement between husband and wife are void. An agreement made in advance between a husband and wife which seeks to change the status of community property yet to be acquired is void. Taylor v. Suloch Oil Co., Tex.Civ.App., 141 S.W.2d 657. Obviously such is not the question here. Thus the appellant's second contention is overruled.

In six points of error the appellant contends that the trial court failed to give in his charge a proper definition of community property; that the court erred in not submitting various requested charges defining the different fact circumstances under which property would be considered community property.

The court defined community property as "all property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains unless the contrary be satisfactorily proved."

Separate property was defined as "all property of the wife, both real and personal, owned or claimed by her before marriage, and that acquired afterwards by gift, devise, or descent, as also the increase of all lands thus acquired, shall be the separate property of the wife except crops harvested and rents collected. The wife shall have the sole management, control, and disposition of her separate property, both real and personal; provided, however, the joinder of the husband in the same manner now provided by law for conveyances of the separate real estate of the wife shall be necessary to the encumbrance or conveyance by the wife of her lands."

■■ We detect no error in the trial court's definition of community property; the appellant's points of error in this connection are therefore overruled. Article 4619, Vernon's Annotated Civil Statutes; Wood v. Dean, Tex.Civ.App., 155 S.W. 363. Nor do we see any error in the court's definition of separate property. The appellant argues that the court should have charged that money borrowed during the marriage is community property; that property acquired on credit is community property; that rents paid to the wife for the use of her separate lands for agricultural and grazing purposes are part of the community estate; and that where either spouse permits his or her property to become so commingled with community property that it cannot be identified, the separate property becomes community property.

■■ Special issues are submitted to a jury to assist the trial court in determining what judgment should be entered in a case. Only the ultimate controlling issues should be submitted. It is not necessary to submit incidental, subordinate, or evidentiary questions which are contained in the ultimate issues. Southern Surety Co. v. Adams, 119 Tex. 489, 34 S.W.2d 789, and other cases there cited. Likewise, where the terms community property and separate property have been adequately defined, it is not necessary to point out specifically in special requested charges the various fact situations whereby separate property may become community property. Robertson & Mueller v. Holden, Tex.Com. App., 1 S.W.2d 570. The appellant's points of error in this connection are, therefore, overruled.

The appellant in his fifteenth point of error contends the trial court erred in making constant and derogatory remarks concerning him throughout the trial, thereby prejudicing his property rights. In his brief the appellant cites as germane assignments of error XIV and XV of the defendant's motion for new trial. Number XIV reads as follows: "The court erred in excluding from the evidence the note which Mrs. Vera Coggin (the appellee) admitted signing her baby boy's name to, because the defendant (the appellant) having been accused by Vera Coggin of mistreating said baby was entitled to introduce such note in evidence to refute such accusation and for the purpose of impeaching her testimony." And number XV reads: "The court erred in excluding from the evidence the 1945 federal income tax returns and all evidence as to income tax returns as prepared and signed by Vera Coggin, because such income tax returns would be direct evidence as to the intent of the parties as to what constituted community income and what did not."

Rule 418(b), Rules of Civil Procedure, provides that the point upon which the appeal is predicated is to be germane to one or more assignments of error when assignments are required. Rule 374 states that the motion for new trial shall constitute the assignments of error on appeal, and a ground of error not distinctly set forth in the motion shall be considered as waived.

■■ The point of error raised by the appellant is not germane to his assignments of error. His point complains of the trial court's conduct while his assignments are concerned with the court's rulings as to the admissibility of evidence. For this reason the appellant's fifteenth point of error is overruled. Treme v. Thomas, Tex. Civ.App., 161 S.W.2d 124.

We have carefully considered all of the appellant's contentions; finding no error, the trial court's judgment is affirmed.