**Wm. David SIBLEY, Appellant,**

v.

**Gladys Mealer SIBLEY, Appellee.**

**No. 14974.**

Court of Civil Appeals of Texas.

Dallas.

June 3, 1955.

Rehearing Denied June 24, 1955.

Burt Barr and Earl R. Parker, Dallas, for appellant.

Sanders, Lefkowitz & Green, and Jack D. Eades, Dallas, for appellee.

PER CURIAM.

This is a duly perfected appeal from only that portion of a divorce proceeding which partitioned the property of the parties, to wit, a 160-acre farm in Kaufman County. The trial court found the property was paid for, 11% out of community funds and 89% out of appellee's separate funds, and entered judgment for appellant for 5½% of the fee in the property and for appellee for 94½% of the fee in the property, and in addition awarded appellee a life estate in the whole farm. Appellant here briefs six points of error.

Point 1 asserts error in the finding and judgment in favor of appellee for 89% of the farm as her separate estate because same is not supported by the evidence. The record shows the farm was purchased during the marriage of appellant and appellee (the parties were married July 24, 1929 and divorced Dec. 9, 1954). The history of the transactions leading up to the purchase of the farm began with the transfer to appellee by appellee's aunt of a certain lot in the City of Dallas which appellee testified was a gift from her aunt to her. The deed recited the consideration as $10 to grantor in hand paid by appellee out of her separate means and estate, the receipt of which was acknowledged and confessed; and conveyed the property to Mrs. Sibley as her separate property and estate. Appellant testified that he paid the $10 recited in the deed out of community funds. Appellee testified the land was worth $2,000 and that the $10 recited in the deed was not paid. The lot in question was traded in as part of the purchase price of another piece of property located on Gaston Avenue. The Gaston Avenue deed recited the consideration as $10 and other valuable considerations. There was evidence that the lot, received by appellee from her aunt, was transferred to the grantor of the Gaston Avenue property as the down payment thereon. The Gaston Avenue deed named appellant as grantee, and the consideration as $165 cash and a note for $335. Appellee testified the two named sums were paid out of community funds. Appellant testified certain improvements were made thereon and were paid for out of community funds. That the Gaston Avenue property was afterwards sold for $4,000 less closing expenses, and the net to them of $3,566.68 was deposited with $2,500 of appellant's separate funds; that on Oct. 11, 1946 the 160-acre farm here involved was purchased for $2,880, $1,929.08 cash and a note for the balance. At the time of the trial the balance due on

the note was $200; payments thereon were made from community funds. Appellee testified the proceeds of $3,566.68 were deposited in a joint checking account in Arlington on July 10, 1946, which account at the time had a balance of $1,698.34 which was community funds. Appellant also testified the $1,698.34 was what was left of a $2,500 deposit of his separate funds placed in the joint account about three months before. The joint account on Oct. 16, 1946, with no deposits in the meantime, had been reduced through checks for living expenses to $4,009.46. On Oct. 11, 1946 the $1,929.08 check as the down payment on the farm reduced the account to $2,070.30. In our opinion the testimony of the parties to the suit, being interested witnesses, made questions of fact for the trial judge sitting without a jury, as to the status of all funds on hand at the time of the divorce; that is, whether such funds were community or separate.

█ The presumption is that where funds are commingled so as to prevent their proper identity as separate or community funds, they must be held to be community funds. However, there are exceptions to the rule or presumption. In divorce proceedings our courts have found no difficulty in following separate funds through bank accounts. Farrow v. Farrow, Tex. Civ.App., 238 S.W.2d 255; Coggin v. Coggin, Tex.Civ.App., 204 S.W.2d 47. Equity impresses a resulting trust on such funds in favor of the wife and where a trustee draws checks on a fund in which trust funds are mingled with those of the trustee, the trustee is presumed to have checked out his own money first, and is therefore an exception to the general rule. U. S. Fidelity & Guaranty Co. v. First National Bank, Tex.Civ.App., 81 S.W.2d 213; Continental Nat. Bank v. Weems, 69 Tex. 489, 6 S.W. 802, at page 805.

██ The community moneys in joint bank account of the parties are therefore presumed to have been drawn out first, before the separate moneys are withdrawn. Edsall v. Edsall, Tex.Civ.App., 240 S.W.2d 424; Farrow v. Farrow, supra; Coggin v. Coggin, supra; and since there were sufficient funds in the bank, at all times material here, to cover appellee's separate estate balance at the time of the divorce, such balance will be presumed to be her separate funds. Point 1 is overruled.

Point 2 asserts error in holding 89% of the property to be appellee's separate property because the undisputed facts show appellant from his separate estate placed $2,500 in the bank prior to the sale of the Gaston Avenue property; that $1,698.34 was in said account when the $3,566.68 from the Gaston Avenue property was placed therein, raising the balance to $5,245.43; that appellant should have $1,698.34/$3,566.68 into $1,929.08 of the down payment as his separate estate in the 160-acre farm, and the balance held to be community property because made from the community estate.

As stated under point 1, the evidence disclosed that the balance in the bank account to the extent of $3,566.68 was the proceeds of the sale of appellee's separate property, and properly awarded to her by the trial court. Point 2 is overruled.

For the reasons stated in passing on point 1, we cannot hold such funds lost their identity as her separate property. Point 2 is overruled.

Point 3 asserts error in holding 89% of the farm to be appellee's separate property because the funds were so commingled that they lost their identity as separate property. For the reasons stated in passing on point 1, we cannot hold such funds lost their separate property classification. Point 3 is overruled.

█ Point 4 asserts the trial court erred "in not charging the separate property, if any, of appellee with improvements made out of community funds." Under the record in this case the trial court was, under Art. 4638, V.A.C.S., required to partition the properties of the parties in such manner as the court should deem equitable, with only the prohibition that neither party shall be required to divest himself or herself of the title to real estate. Partitioning the

property of the parties upon divorce is based upon equitable principles, considering all the facts and circumstances, limited only by the prohibition as to a forced divestiture of title to real property by either party.

As said by our Supreme Court in Ex parte Scott, 133 Tex. 1, 123 S.W.2d 306, at page 313: "* * * This statute does not allow the divorce court to compel either party to the divorce action to divest himself or herself of the title to realty. As we construe it, Article 4638, supra, is mandatory in its provisions, and, under its terms, the District Court of Dallas County as between this husband and this wife, must decree a division of the property. Also, under this statute the division of the property does not have to be equal. The court can be controlled by what the facts may lead him to believe is just and right. * * *"

The divorce here was granted because of appellant's cruel treatment. He did not appeal from that portion of the judgment. The evidence does show, as contended by appellant, that certain improvements were made on the Gaston Avenue property and on the Kaufman County farm after they were acquired, amounting to between $1,000 and $1,100. The amount of this charge would be in favor of the community and since the court may award the community property equitably, we cannot hold under the record here that the trial court abused his discretion in the manner in which he equitably partitioned the property. Point 4 is overruled.

Point 5 complains of the reopening of the case by the trial court for additional testimony after appellant had filed his appeal bond with the District Clerk and after it had been approved by such Clerk.

The record does show that about three days after the appeal bond was filed by appellant the court reopened the cause and heard the evidence of a doctor who contradicted evidence given on the trial to the effect that appellant had an active case of tuberculosis. We find no reversible error in this action since it was harmless and could not have affected the court's prior announced judgment which was not thereafter disturbed or changed by the trial court. Point 5 is overruled.

Point 6 asserts error in the finding that appellant caused the community estate to suffer loss in excess of $4,000 because such finding is not supported by the evidence. The trial court's findings in the judgment are as follows: "* * * and it appearing to the court and the court here and now finds that at the time title to said property was acquired, 89% of the cash purchase price therefor was paid out of the * * * separate funds and estate of plaintiff, Gladys Mealer Sibley, said funds having been traced from the proceeds received from the sale or trade of certain other real property acquired by plaintiff as her separate property by gift from Mary L. Orem, and 11% of the cash purchase price therefore was paid out of community funds belonging to the community estate of plaintiff and defendant; that plaintiff, Gladys Mealer Sibley, owns title to 89% of said property in fee simple as her own separate property and estate, and that the community estate of plaintiff and defendant owns title to 11% of said property; that defendant's conduct in failing and refusing to protect the equity of the community estate in the Grand Prairie, Texas, homestead on Oak Street was such that the value and amount of their community estate was appreciably diminished to the extent that such equity in excess of $4,000 was lost; and that the court being of the opinion that the community interest of 11% in said property should be divided equally between plaintiff and defendant, but the plaintiff should be further granted a life estate in and upon the entire property and plaintiff be required to assume the mortgage indebtedness existing on said property, such a division of said property being just, right and equitable, having due regard to the rights of each party; * * *." Appellant asserts that the court, by his own remarks during the trial, showed that he did not intend "to sign any such judgment."

There is nothing in this record to show that subsequent to such remarks, the judge did not abandon such remarks after hearing all of the evidence. Absent such a showing, his judgment as contained in the transcript being based on all the evidence, including that heard after such remarks, this Court is controlled by the judgment in the transcript, rendered after hearing all the evidence, in passing on the assignments on appeal. Point 6 is overruled.

Finding no reversible error in the record, the judgment below is

Affirmed.